FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 12, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SYRECEA E.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

    Defendant.

No. 4:21-cv-5054-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, AND REMANDING FOR PAYMENT OF BENEFITS**

Plaintiff Syrecea E. appeals the Administrative Law Judge's (ALJ) finding that her disability did not begin on the alleged onset date but rather 21 months later. Because the ALJ failed to acknowledge several medical records that reflected Plaintiff's handling or fingering abilities were limited to less than frequent handling/fingering, the ALJ erred. Accordingly, Plaintiff's Motion for Summary Judgment is granted, the Commissioner's Motion for Summary Judgment is

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

denied, and this matter is remanded for payment of benefits from August 25, 2014, to May 20, 2016.

## I. Factual and Procedural Summary

Plaintiff filed Title 2 and Title 16 applications alleging disability beginning August 25, 2014.[2] Her claims were denied initially and on reconsideration.[3] In December 2017, an administrative hearing was held by video before ALJ Jesse Shumway, who took testimony from Plaintiff about her conditions and symptoms and from the testifying medical expert Dr. Lynn Jahnke.[4] Thereafter, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled as of May 20, 2016.[5] The Appeals Council denied review of the ALJ's decision.[6]

Plaintiff filed a federal lawsuit challenging the partial denial of her claimed disability from August 25, 2014, to May 20, 2016.[7] The magistrate judge determined that the ALJ erred when considering the medical opinion evidence and

---

[2] AR 39, 233–50, 252–58.

[3] AR 140–52, 155–76.

[4] AR 35–69.

[5] AR 12–34.

[6] AR 1324–29.

[7] AR 1330–46; E. D. Wash. Case No. 4:19-cv-5130-JTR.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

remanded the matter back to the Commissioner for reconsideration of the evidence for the denied disability period.[8]

Because the issue on remand was limited to the denied disability period, no new hearing was conducted or testimony taken.[9] Instead, the ALJ reconsidered the written record. The ALJ maintained his decision, finding that Plaintiff failed to establish that she was disabled between August 25, 2014, and May 20, 2016. In support of his decision, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2019.
- Step one: Plaintiff had not engaged in substantial gainful activity since August 25, 2014, the alleged onset date.
- Step two: Plaintiff had the following medically determinable severe impairments: osteoarthritis in the bilateral knees, Behcet's disease, fibromyalgia, extreme obesity (BMI 65+), and mild bilateral carpal tunnel syndrome (status post bilateral surgical releases in March and April 2016).
- Step three: As of May 20, 2016, Plaintiff had an impairment or combination of impairments that met or medically equaled the

---

[8] AR 1347–62; E.D. Wash. Case No. 4:19-cv-5130-JTR, ECF No. 16.

[9] AR 1449–51.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

severity of one of the listed impairments, namely, she equaled listing 1.02 (major dysfunction of a joint).

- RFC: Before May 20, 2016, Plaintiff had the RFC to perform sedentary work except:

    > She could not kneel, crawl, or climb ladders, ropes, scaffolds, stairs, or ramps; she could only occasionally perform all other postural activities; she could frequently handle and finger; she could not have concentrated exposure to extreme cold or vibration; and she could have no exposure to hazards such as unprotected heights and moving mechanical parts.

- Step four: Before May 20, 2016, Plaintiff could perform past relevant work as an order clerk.[10]

In reaching his decision, the ALJ gave:

- great weight to the treating opinion of Erin Saunders, PA-C and the reviewing opinions of Lynne Jahnke, M.D., and Leslie Arnold, M.D.

- some weight to the reviewing opinion of Barney Greenspan, Ph.D., and the treating opinion of Jason Roberts, ARNP.

- little weight to the examining opinion of Lynn Orr, Ph.D., the treating opinions of Amanda McLean MSW, LICSW, Dev Banerjee, M.D., and

---

[10] AR 1235–53.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

Jeffrey Butler, M.D., and the reviewing opinions of Leslie Postovoit, Ph.D., and Guillermo Rubio, M.D.[11]

The ALJ also found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those were not fully supported before May 20, 2016, because they were inconsistent with the objective imaging studies, the recommendation that Plaintiff exercise, her improvement with medication, and her activities of daily living.[12] Likewise, the ALJ discounted the lay statements from Plaintiff's daughter because they were inconsistent with the objective medical evidence and the daughter was not medically trained.[13]

Plaintiff timely appealed the ALJ's partial denial to this Court.

## II.    Standard of Review

A district court's review of the Commissioner's final decision is limited. The Commissioner's decision is set aside "only if it is not supported by substantial

---

[11] AR 1242–52. The ALJ properly did not assign weight to the referral form filled out by a DSHS referring disability specialist. AR 1959–61. There is no evidence that Dr. Myrna Palasi completed the form after being requested to do so. *See, e.g.*, AR 1959 (requesting that Dr. Palasi opine as to whether she agrees with ARNP Jason Roberts' sedentary rating or whether Plaintiff is severely limited).

[12] AR 1246–1248.

[13] AR 1249.

evidence or is based on legal error." Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record." The Court considers the entire record.

Further, the Court may not reverse an ALJ decision due to a harmless error. An error is harmless "where it is inconsequential to the ultimate nondisability determination."

### III.     Analysis

**A.     Disability onset date**

The central issue is whether the ALJ's decision that Plaintiff was able to sustain full-time work between August 25, 2014, and May 20, 2016, is supported by substantial evidence. More pointedly, as the ALJ recognized, the primary question is whether Plaintiff's ability to handle and finger was more limited than the ALJ's frequent handling/fingering limitation. This is the primary question because, if Plaintiff was limited to less than frequent handling/fingering, she was unable to work as an order clerk or perform other competitive work given that she was older than 50 as of August 2014 and was limited to sedentary work.[14]

---

[14] AR 68; Medical Vocational Rule 201.12 & 201.14; Social Security Ruling (SSR) 83-14, Capability to do other work, Effects of nonexertional impairments (stating

The ALJ based the frequent handling/fingering limitation largely on the testimony of Dr. Jahnke. The ALJ recognized:

> Dr. Jahnke vacillated between occasional and frequent manipulative limitations, but [I] point out that her ultimate conclusion was frequent handling/fingering, and this is the conclusion that is best supported by the record. For example, when the claimant saw Jeffrey Butler, M.D., on August 28, 2015, she had no swelling in the DIP, PIP, or MCP joints. Her grip strength was intact. There was no swelling and pain with stress extension or flexion of the wrists. In addition, an EMG on January 25, 2016 only showed evidence of mild median neuropathy at the wrists.[15]

A review of the record, however, reveals that the ALJ and Dr. Jahnke did not fully consider the medical records, the medical opinions, Plaintiff's employment difficulties, and Plaintiff's reported symptoms, all of which when considered comprehensively support and are consistent with Plaintiff's claim that her handling/fingering abilities were more impaired than the ALJ's assigned frequent handling/fingering limitation.

1. <u>Medical records</u>

During the administrative hearing, Dr. Jahnke and the ALJ focused on Dr. Butler's August 28, 2015 medical note, which the ALJ summarized as describing Plaintiff's hand functioning as normal,[16] but there was little discussion

---

that "bilateral manual dexterity is necessary for the performance of substantially all unskilled sedentary occupations"); SSR 96-9p.

[15] AR 1248 (internal citations omitted).

[16] AR 1247.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

as to other treatment records mentioning Plaintiff's handling/fingering difficulties.[17]

Medical records before August 25, 2014, are relevant to fully consider Plaintiff's reported hand and wrist symptoms and the progression of such.[18] In October and December 2013, she was observed with myofascial tenderness in her proximal lateral forearms.[19] In conjunction with her observed overall myofascial tenderness and other symptoms, Plaintiff was diagnosed with fibromyalgia and Behcet's disease.[20] And Plaintiff reported to medical professionals that her ability

---

[17] AR 47–54

[18] *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (recognizing that medical evidence predating the period at issue is relevant to considering whether the condition has worsened).

[19] AR 708–09, 1974–76.

[20] AR 686–88 (May 2014); AR 680–84 (July 2014). Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004)); *see also* SSR 12-2p. Behcet's disease is a rare disorder that causes blood vessel inflammation throughout the body. *See Bechet's disease*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/behcets-disease/symptoms-causes/syc-20351326 (last accessed July 11, 2022).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

to work was being impacted by pain.[21] About the time of the alleged onset date of August 25, 2014, Plaintiff was placed on long-term leave from her employment due to her impairments—this after several unsuccessful workplace accommodation attempts, including part-time work.[22] As a result, Plaintiff lost medical insurance and was unable to resume medical care until the spring of 2015.[23]

That spring, she continued to report hand and wrist pain to medical providers. In April 2015, Plaintiff was observed with pain extending and flexing her left wrist, positive Tinel's sign bilaterally, and paresthesia into the right fourth and fifth digit when flexing her elbow.[24] In June 2015, PA-C Saunders observed Plaintiff with positive bilateral Tinel's and Phalen's signs, painful abduction and mild impingement of the right shoulder, painful abduction of the left shoulder, decreased thumb opposition strength bilaterally left greater than right, a tremor in

---

[21] AR 55–57, 60; 705–707 (Oct. 2013: noting pain around right first MCP joint and in PIP joints and myofascial tenderness); AR 1972–75 (Dec. 2013: reporting ongoing generalized severe pain and stiffness including sensitivity and pain in hands); AR 686–87 (May 2014: reporting making more typographical errors); AR 680–83 (July 2014: reporting working at a slower pace and sensitivity/pain in hands).

[22] AR 282, 300, 647, 1388–92, 1959.

[23] AR 1394–96.

[24] AR 749–50.

the left hand, and a 1+ brachioradialis reflex bilaterally.[25] Then, as discussed by the ALJ and Dr. Jahnke, Plaintiff was seen by Dr. Butler in August 2015.[26] While Dr. Butler noted there was no swelling or deformities of the hands or wrists and that Plaintiff's grip strength was intact, he assessed that "the patient has had symptoms of carpal tunnel syndrome. She has been prescribed wrist braces. If she remains symptomatic, we may pursue nerve conduction studies."[27]

Plaintiff's wrist and hand conditions persisted. In January 2016, nerve conduction studies and a physical examination revealed bilateral, mild (left worse than right) median neuropathies at the wrist, impaired sensation over the left arm, and diminished bilateral deep tendon reflexes.[28] PA-C Saunders stated, "I reviewed recent nerve conduction studies of the bilateral upper extremities. She appears to have carpal tunnel syndrome. She needs to be wearing the neutral wrist splints as prescribed. If symptoms persist after 12 weeks of wearing neutral wrist splints at night, then a surgical consult would be warranted."[29]

In February 2016, PA-C Saunders noted that, even though Plaintiff had been wearing her wrist braces since the summer, she was tender over the bilateral

---

[25] AR 742–43.

[26] AR 790–95.

[27] AR 794–95.

[28] AR 845–48.

[29] AR 983.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

first carpometacarpal with crepitus on range of motion of the left thumb, tender over the right distal interphalangeal joints, decreased grip strength, and tender over her shoulders without full range of motion.[30]

Plaintiff proceeded with carpal tunnel surgery on her left hand in March 2016 and her right hand in April 2016.[31] Notwithstanding the surgeries, Plaintiff was observed by Dr. Butler on May 20, 2016, with hand weakness and diminished pinprick sensation over thumbs bilaterally.[32] Dr. Butler opined that it was possible that Plaintiff had nerve injury in her hands from which she may not fully recover and recommended that she wear bilateral wrist braces at night and during aggravating activity. On that same date, Plaintiff had a follow-up appointment with the orthopedist for her carpal tunnel. The orthopedist observed that, while Plaintiff could make a full fist and had good strength, she showed some signs of ulnar nerve irritation and a positive Tinel's sign.[33] Then in November 2016, PA-C Saunders observed Plaintiff with painful range of wrist movement bilaterally, tenderness over the medial and lateral epicondyles of the elbows, and pain extending and flexing both elbows.[34]

---

[30] AR 980–81.

[31] AR 852, 855.

[32] AR 968–73.

[33] AR 1012.

[34] AR 965.

The longitudinal medical records indicate that Plaintiff's hand and wrist pain were not solely related to her carpal tunnel but also her fibromyalgia and Behcet's disease, conditions that Plaintiff had been diagnosed with before the alleged onset date. The ALJ and Dr. Jahnke erred by failing to consider the longitudinal medical records. This error in turn consequentially impacted the ALJ's weighing of the treating medical opinions.

2. Medical opinions

Plaintiff's treating providers found that her fibromyalgia and Behcet's disease limited her. For instance, in May and July 2014, Dr. Butler recommended that Plaintiff be limited to a 32-hour work week and/or have other accommodations to allow her to work effectively due to her Behcet's disease and fibromyalgia.[35] In 2015, ARNP Roberts opined that Plaintiff was moderately or markedly limited in her abilities to handle and reach due to her impairments; at that time, ARNP Roberts had not yet identified carpal tunnel as an impairment.[36] In 2017, PA-C Saunders opined that Plaintiff would be off task 50% of the workday, would need to lie down several times during an 8-hour work shift, and would be absent 4 or more days per month, and Dr. Banerjee opined that Plaintiff was limited to occasional use of her right and left upper extremities for handling and reaching.[37]

---

[35] AR 735–37.

[36] AR 1950–58.

[37] AR 1016–24, 1932–34.

These treating opinions support and are consistent with Plaintiff's claim that her handling/fingering abilities were impacted by her fibromyalgia and Behcet's disease—not merely carpal tunnel—and that she was restricted to occasional handling/fingering, not frequent handling/fingering.

As previously mentioned, Dr. Jahnke vacillated as to whether Plaintiff was limited to frequent or occasional handling/fingering. During her testimony, Dr. Jahnke focused on Plaintiff's carpal tunnel but to failed to appreciate that Plaintiff's symptoms also resulted from her Behcet's disease and fibromyalgia, conditions that result in symptoms that are not diagnosable by imaging and that can wax and wane.[38]

By failing to consider that fibromyalgia and Behcet's disease contributed to Plaintiff's hand/wrist symptoms, the ALJ—and Dr. Jahnke, on whose testimony the ALJ relied—failed to consider the fluctuating nature of Plaintiff's hand/wrist symptoms and that the symptoms began by August 25, 2014. In doing so, the ALJ consequentially erred by discounting the medical opinions pertaining to Plaintiff's handling/fingering abilities.

3. Plaintiff's reported symptoms

The ALJ also failed to offer clear and convincing reasons supported by substantial evidence for discounting Plaintiff's reported handling/fingering limitations. First, reliance on imaging studies is not apt here as Plaintiff's

---

[38] AR 47–48.

handling/fingering limitations resulted not only from carpal tunnel but also from fibromyalgia and Behcet's disease, which are not readily diagnosable by imaging.[39] Second, there is no evidence that Plaintiff's handling/fingering limitations would medically improve with exercise.[40] Third, although Plaintiff was off her Behcet's and fibromyalgia medication for several months after August 2014, her handling/fingering limitations persisted after she resumed medication and had carpal tunnel surgeries. Fourth, although Plaintiff's employment was high-pressure, she was given work accommodations, including part-time work, and notwithstanding these accommodations she was unable to sustain work.[41] Finally, Plaintiff's ability to wash dishes a few times per week while sitting on a chair, reading the Bible daily, watching live-streamed religious services, and spending time with family, including her daughter who lived and cared for her at home, are not activities of daily living that are inconsistent with Plaintiff's reported wrist and

---

[39] *See Revels*, 874 F.3d at 657 (recognizing that the diagnosis of fibromyalgia does not rely on imaging); https://www.mayoclinic.org/diseases-conditions/behcets-disease/diagnosis-treatment/drc-20351331 ("No tests can determine whether you have Behcet's disease.").

[40] *See* 20 C.F.R. §§ 404.1594, 416.994.

[41] *Cf. Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 14

hand limitations.[42] As reflected in both Plaintiff's and her daughter's function reports in September 2015, Plaintiff required help getting dressed and with bathing and fixing her hair, she had problems gripping due to hand weakness, and she longer did American sign language because of tremors and muscle spasms in her hands.[43]

The ALJ failed to offer clear and convincing reasons supported by substantial evidence for discounting Plaintiff's reported fingering/handling limitations experienced on the alleged onset date.

4. Conclusion

A thorough review of the objective medical evidence, the treating medical opinions, and Plaintiff's limited activities clearly indicate that she was limited to occasional handling and fingering between August 25, 2014—about when she was forced to take leave from work—and May 20, 2016, the date on which Plaintiff equaled listing 1.02.

---

[42] *See Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (recognizing that the fact the claimant "could participate in some daily activities does not contradict the evidence of otherwise severe problems that she encountered in her daily life during the relevant period").

[43] AR 319–35, 353–67.

**B.     Remand for an award of benefits**

The decision whether to remand a case for additional evidence or to award benefits is within the Court's discretion.[44] Absent clear evidence from the record that a claimant is entitled to benefits, remand for further proceedings is the usual course.[45]

As the ALJ found, Plaintiff suffered from fibromyalgia, Behcet's disease, carpal tunnel syndrome, and other severe impairments. The record is clear that when these impairments are considered cumulatively Plaintiff, who was then older than 50, was unable to competitively work because she was restricted to sedentary work and occasional fingering/handling as of August 25, 2014. Further proceedings are not required to develop the record. Moreover, this matter has been before the ALJ on two occasions. Plaintiff is to be awarded benefits from August 25, 2014, to May 20, 2016.

---

[44] *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

[45] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*, 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### IV. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 24**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING IN PART and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits for the period between August 25, 2014, to May 20, 2016.

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to file this order and provide copies to all counsel.

**DATED** this 12th day of July 2022.

*Edward F. Shea*

EDWARD F. SHEA
Senior United States District Judge